EASTERN DIS.
June, 1834.

GODDARD'S
HEIRS
vs.
URQUHART.

It is therefore ordered, &c. that the judgment of the District Court be affirmed with costs.

Where a person contracts with a workman to build several houses for a certain price payable at fixed periods, and discharges him before the completion of the edifices, and it is in proof the work was well executed, the latter will recover the full amount of his work and labor done as on a *quantum meruit.*

---

GODDARD'S HEIRS *vs.* URQUHART.

6L 659
49 995

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The prescription under the Spanish law, of debts on simple contracts resulting from chirographory or private instruments of writing is *ten* years.

The *Civil Code* of 1808, *art.* 65, *p.* 486, which provides that *all actions, &c.* are prescribed after thirty years, does not repeal the previous law which prescribes personal actions, debts on simple contracts, &c. after a lapse of *ten years.*

EASTERN DIS.   Under the *Louisiana Code* the prescription of personal actions and debts ev-
June, 1834.
               denced by chirographory instruments, is twenty years against persons
GODDARD'S       residing out of the state.
HEIRS
*vs.*
URQUHART.      Where the law is changed after prescription begins to run, the time which
               elapsed under the law preceding the alteration is to be computed according
               to that law, and that which follows is to be reckoned according to the new
               law; and the time acquired under the old law is to be added to that acqui-
               red under the new law, in the proportion that each *time* bears to the *term*
               required by the old and new laws.

               So in a personal action in which the prescription under the Spanish law is ten
               years, and nine years and seven months having expired, and only five
               months wanting, at the promulgation of the *Louisiana Code* in 1825, which
               changed the prescription of personal actions as running against absentees
               to twenty years: *held* that ten months is required under the new law to
               complete the prescription.

               In an action on a notarial instrument, executed by the defendant to a third
               party to raise a mortgage when he had surrendered up the debt for which
               the mortgage was given, but in which he acknowledges the receipt of the
               money; after a lapse of twenty-three years before suit, a jury may well
               infer from this great length of time, corroborated by circumstantial proof
               that the debt never existed, or has been paid, and their verdict for the
               defendant will not be disturbed.

This is a personal action on a notarial instrument of wri-
ting, instituted against Thomas Urquhart, and commenced
by Wm. F. Goddard a citizen of South-Carolina in 1830, in
which he claims five thousand and ten dollars, as the amount
acknowledged to have been received by the defendant in
said act.

The record and evidence shows, that in the year 1805, one
John Almond died, intestate, in the Territory of Orleans,
leaving a considerable property, consisting principally in
slaves and some land.   Thomas Urquhart was appointed the
administrator of his estate, and caused the property to be sold
on a credit of twelve months; the slaves and lands remaining
mortgaged until payment.   Among the notes taken by the

EASTERN DIS.
June, 1834.

GODDARD'S
HEIRS
vs.
URQUHART

administrator for the price of slaves sold, was one given by judge Prevost; for five thousand and ten dollars, and secured by a mortgage on the slaves purchased by him.

In March 1806, one John Paisley, (the husband by a second marriage, of Almond's only daughter and sole heir,) came to Louisiana from South-Carolina, with full powers to receive the estate of Almond. On the 25th of March 1806, Thomas Urquhart rendered his account as administrator, which was received, and the Superior Court for the Territory of Orleans ordered the effects and monies belonging to said estate to be paid over to Paisley, which was done, and Urquhart discharged as administrator and his bond cancelled.

On the 8th July 1807, Urquhart signed an act of the following purport:

"Pardevant nous, Pierre Pédesclaux, notaire public, &c.: Fut présent le Sr. Thomas Urquhart, négt., demeurant en cette ville; lequel en sa qualité d'exécuteur testamentaire de feu Jean Almond, reconnait avoir reçu du Sr. Jean B. Prevost la somme de cinq mille dix piastres pour autant que le dit Sr. lui devait, par acte à notre rapport daté du six Mars mil huit cent six, au moyen duquel payement, le dit Sr. Urquhart en sa dite qualité s'est désisté et séparé de tous ses droits et propriétés, acquis et quitte le dit Sr. Prevost du montant des clauses au dit acte du six Mars, donné main levée pure et simple de l'hypothèque consentie en sa faveur et souffert que radiation en soit faite sur le régistre conservateur et partout ou besoin sera, dont quittance requise et octroyée."

"Fait et passé en notre étude à la Nouvelle-Orléans, le jour et an que dessus, en présence des Srs. J. B. Ramirez et Joachin Lozano, témoins qui ont signé avec le Sr. comparant et nous notaire. La minute est signée." Thomas Urquhart, executor of John Almond. J. Lozano, J. B. Ramirez, Pierre Pedesclaux, notary.

Upon this act suit was brought. Thomas F. Goddard the original plaintiff, was the only surviving child and heir of Mary A. Almond, by her first marriage with William Goddard of South Carolina. She nor the plaintiff ever

EASTERN DIS.
June, 1834.

GODDARD'S
HEIRS
vs.
URQUHART.

resided in Louisiana. Mary A. Almond, afterwards Mrs. Goddard, and finally Mrs. Paisley was the only child and sole heir of John Almond, deceased, whose estate was administered by the defendant.

John Paisley, her husband, came to Louisiana and received the estate as her legal representative, in March 1806. The note of judge Prevost was surrendered up to him with the other effects. Mrs. Paisley died the July following, in South Carolina, and John Paisley in December following, (all in 1806) shortly after his return to to South Carolina.

Thomas F. Goddard, the plaintiff, was born November 8, 1794, was of full age in 1815, and instituted this suit fifteen years afterwards, in 1830. He died *pendente lite* and his heirs have continued the litigation to its conclusion.

The defendant pleaded the general issue and prescription.

On the trial the plaintiff offered the act sued on in evidence; also the act of sale and mortgage of the slaves purchased by judge Prevost in 1806, at the sale of Almond's estate, reciting the note which he gave for the price in the sum of five thousand and ten dollars; and likewise the record of the suit in the Territorial Court, of *Paisley* vs. *Urquhart*, in which the latter renders an account of his administration and surrenders up all the notes and effects of Almond's estate to Paisley, Prevost's note being included. The plaintiff also produced an act signed by Paisley in May, in 1807, in which he appoints Urquhart his attorney in fact to act for him, but no mention is made of any debts left for collection, or is there any evidence that Urquhart ever acted under it; he did not sign the act or accept of the agency. The defendant offered the books of T. and D. Urquhart (which were offered, likewise in evidence by the plaintiff,) in which all the transactions in the administration of Almond's estate were regularly entered and carried through until the close and discharge of the defendant by order of court. The note of Prevost with all the others taken for the sale of the estate of Almond are entered, specified and delivered up. This note or its proceeds never

again appears in these books.    Another note on Reed and
Lilly for three thousand three hundred and twenty four
dollars, which was included among those delivered up to
Paisley, was afterwards discounted by T. & D. Urquhart
and passed regularly through the books of the firm.    David
Urquhart who also testified for defendant, states that he
was intimate with his brother's affairs, they done all their
business together, and he never heard of this debt of Pre-
vost's after the note was surrendered up to Paisley.    He
was so familiar with all their business that he thinks it
hardly possible that his brother could have received this
sum without his knowledge.    Other circumstances were
adduced as negative proof that the defendant never re-
ceived the amount of Prevost's note.

The jury returned a verdict for the defendant; after
discharging a rule for a new trial, the District Judge gave
judgment confirming the verdict.

The plaintiff appealed.

*Preston,* for the plaintiff and appellant.

1. Contended that Urquhart received the sum claimed, at
the date of the act sued on *in July* 1808; and that this suit
was instituted in 1830, between which twenty-two years
have elapsed.

2. This is a personal action, and according to the *Civil
Code* of 1808, *art.* 65, *p.* 486, "after thirty years all actions
either personal or real are prescribed."

3. This provision of the *Civil Code* in force during the
time of this claim embraces the present suit which is a per-
sonal action.    There is no special provision in the Code or
in the Spanish law as to the prescription of an action for
money received on a *bond* and *mortgage* for the price of slaves.

4. If there be merely a general provision of the Spanish
law that personal actions are prescribed by ten years, I con-
tend that the general provision of the *Civil Code* of 1808,
repeals by superceding it.

5. The latter is a later provision of the law on this subject

EASTERN DIS.
*June,* 1834.

GODDARD'S
HEIRS
*vs.*
URQUHART.

EASTERN DIS.
June, 1834.
——————
GODDARD'S
HEIRS
vs.
URQUHART.

to which the former law must yield. The affirmation that a personal action is prescribed by thirty years is a negation that the same action is prescribed by a shorter period. The new law is irreconcilable with the old. *Civil Code, art.* 29, *p.* 6. 7 *Mar. N. S.* 108.

6. The laws of Spain were the same as to the prescription of debts as provided in the *Civil Code* of 1808. *Partida* 3, *tit.* 29, *l.* 22.

7. The 63d law of *Toro* afterwards fixed the prescription of personal actions not at ten years as is contended for on the other side, but at twenty years. It is the right of execution on a personal obligation, not an action on a personal obligation which this law prescribes in ten years. *Nov. Rec. book* 4, *tit.* 15, *l.* 6.

8. *Febrero* comments at large on this law which is a little obscure, and establishes conclusively that the personal action is prescribed only by twenty years; but leaves it doubtful whether that twenty years does not commence only after the prescription of the executory process by ten years, which would make the whole prescription thirty years as in the *Partidas*. *Febrero, p.* 1, *ch.* 7, *sec.* 4, *nos.* 72, 73, 74 *and* 75.

9. Gomez in his commentary upon the law of *Toro* seems to think it may stand with that of *Don Alonzo in book* 3*d. tit.* 13, *law* 3 *of the Ordenamiento Real.* But it is entirely inconsistent with that law and supercedes it.

10. On an inspection of the original law of *Toro* it will be seen that the prescription established by *Don Alonzo* is *expressly* repealed, and consequently is not noticed in the *Partidas*, nor by *Lopez* or *Febrero*.

11. This law was published by the cortes held in *Toro* in 1505, but the *Partidas* was often subsequently republished and sanctioned by Spanish authority. *Vide Ord. Philip* II. of March 1567 in the beginning of the *Recopilacion*, also *Rec. book* 2, *tit.* 1, *law* 3.

12. This action was not prescribed under the law of *Toro*. In 1808 when the money was received, Goddard the plaintiff was a minor about fourteen years of age. He came of

age in 1815, and therefore the prescription of this, his personal action has not occurred.

13. The adoption of the *Louisiana Code* in 1825, changed the prescription of personal actions to ten years when present, and twenty if absent, and repealed the Spanish law. The new Code cannot act retrospectively, and therefore does not bar the present action. *La. Code*, 3508.

14. On the merits, this case rests on an authentic act acknowledged by the defendant, of the receipt of money belonging to the plaintiff's ancestor, and raising a mortgage given to his estate.

*Curry*, for defendant.

1. Thomas Urquhart is sought to be made liable for the amount of a note given by judge Prevost to him as administrator of Almond's estate, for the purchase of certain slaves. It is in proof that this note was surrendered up to Paisley in March 1806, and no evidence is produced that it ever after came into his hands.

2. The act sued on was signed by Urquhart the 8th July, 1807, more than a year after Prevost's note was given up, and is a simple instrument raising the mortgage and acknowledging to Prevost that the money was received.

3. Upon the very face of the act, it being made single for the sole purpose of raising Prevost's mortgage, the clause acknowledging payment was evidently inserted to comply with the forms of law.

4. This is not a question of the force and validity of an authentic act, which by our law makes full proof between the parties to it, of the obligations contained in it.

5. The act is in favor of judge Prevost, and as between them the defendant would be estopped from disputing the obligation it contains as to the release of the debt and extinguishment of the mortgage.

6. But as to all other persons not parties to the instrument, as the parties to this suit, it is merely an extra-judicially admission, which by its very terms is founded in error.

84

This admission stands on the same footing with that of any parol admission, and its validity must be tested by the same rules of evidence.

7. Then neither the plaintiffs or their ancestors in whose right they claim, were parties to this act. The plaintiff's counsel admits it was signed by Urquhart, for the purpose of *raising* a mortgage given to the estate of plaintiff's ancestor.

8. This was the sole object; but it was signed in error, for though Urquhart is styled in the act "*executor testamentaire*," and to his signatures is affixed "executor of John Almond," he never was executor; being appointed in the first instance *administrator only*.

9. Thomas Urquhart never received the money he is charged with, because Prevost's note was not in his possession; it was delivered up, and no vestige of it or its proceeds ever after appears in any of the evidence, except what is attempted to be inferred from the act sued on.

10. There is negative proof that Urquhart never received this money arising from the lapse of time, the negative silence of the books of T. and D. Urquhart, through which all their money transactions passed, and a mass of circumstantial evidence.

11. An intelligent jury on hearing all the testimony, have pronounced a verdict for the defendant and the district judge, before whom the case was tried, was fully satisfied of the correctness of the verdict, and refused a new trial.

12. This court has said where a case presents no question of law, but merely one of fact *on the weight of testimony*, the verdict will not be disturbed, unless it is manifestly erroneous. 6 *Martin*, *N. S.*, 71. *Ibd.* 530. *Ibd.* 538. 3 *Martin*, *N. S.*, 155.

13. So in a hard action where the defendant acted with good intentions and verdict in his favor; and where the case turns on a mere question of fact and the evidence leaves it doubtful, the verdict will not be disturbed. 7 *Martin*, 371. 4 *L. Rep.* 444.

*Eustis,* on the same side.

EASTERN DIS.
*June,* 1834.

GODDARD'S
HEIRS
*vs.*
URQUHART.

1. This claim or right of action is barred by prescription.

2. The plaintiff claims in right of his mother who was the sole heir of Almond. She inherited and was in possession of his estate at the time of her death, in July 1806. Her succession at the time the right now claimed accrued was *vacant* as respects her rights and property in Louisiana.

3. If a person dies in another state leaving property in this, and his heirs live out of the estate, the succession is *vacant* and a curator should be appointed. 1 *Mar. N. S.* 202. 12 *Mar.* 101.

4. Prescription runs against a vacant *estate* though no curator has been appointed. *Civil Code p.* 486: *art.* 62, *latter clause. La. Code* 3492.

5. Prescription has run in this case twenty three years against the estate, in right of which the plaintiff claims, and fifteen years after he was of age, and before the institution of this suit.

6. By the Spanish law debts were prescribed by the lapse of *ten* years; "*si las deudas no fueren demandados hasta diez anos que sean prescriptas.*" *L.* 3 *of the Ordenamiento Real. Don Alonza en Alcala. Era* 1386.

7. This law has never been repealed. It was enacted subsequent to the *Partidas* which were first published in the Cortes of Alcala, in the year 1348. *Vide introduction to Moreau and Carlton's translation of the Partidas.*

8. The authors of that work state the Partidas and the Ordenamiento Real to have been published in the same year, viz: 1348. This is a mistake; the *Ordenamiento Real* is dated thirty eight years afterwards, viz: in 1386. This law is contained in the *Teatro de legislacion* as being still in force. *Vol.* 24, *sec.* 10.

9. It is expressly recognized to be in force by the 63d law of *Toro* which made exceptions to it and renders the question of its existence as *a law* indisputable.

10. The laws of *Toro* were promulgated in 1505; the 63d is as follows: "El derecho de executar por obligacion per-

EASTERN DIS.
June, 1834.

GODDARD'S
HEIRS
vs.
URQUHART.

sonal se prescriba por diez anos; y la accion personal y la executoria dada sobre ella sa prescriba por veinte anos, y no menos: pero donde en la obligacion hay hipoteca, o donde la obligacion es mixta, personal y real la deuda se prescriba por treinta anos, y no menos: lo qual se guarde sin embargo de la ley del Rey Don Alonzo nuestro progenitor, que puso, *que la accion personal se prescribiese por diez anos.*" (*ley* 6, *tit.* 15. *lib.* 4 *R.*) 3 *Nov. Rcc. lib.* 10, *tit.* 8, *ley* 5, *p.* 196.

11. This law is contained in the *Novissima Reeopilacion* published in 1805, which is the highest and most conclusive testimony as to the authority of the *Ordenamiento Real* being still in force.

12. Gomez in his commentary on the law of *Toro* considers this law of the *Ordenamiento Real* as in force when he wrote. He says; "Exquibus datur nota intelligentia et declaratio, (*ad leg.* 3 *titul.* 13 *lib.* 3 *Ordin.*) qua cavetur, quod actio vel obligatio personalis tantum durat per 10 annos: ut intelligatur, quando continetur in chirographo et scriptura privata: and sic non corrigitur per istam: et illa lex est utillisima et potest practicari cum bona conscientia, quando quis solvit et non potest probare, vel aliter satisfecit creditori." *Commentary of Gomez* 641.

13. The learned translator of the Civil Laws of Spain considers simple personal obligations to be prescribed in ten years. *p.* 109.

14. The rule of construction as to the repeal of laws established by Royal Ordinance by Philip V. in 1714, shows conclusively that this law of the *Ordenamiento Real* is in force. 1 *Rec. Nov. Book* 2, *p.* 11, *ley* 11.

15. The instrument of writing sued on is a simple acknowledgment of having previously received money and a release of the mortgage to Prevost; the only party to it being the defendant. Except as to these objects and as between the defendant and Prevost, every thing else is *dehors* the act, and as to the plaintiffs it is a matter of proof *in pais.*

16. The act is not executive, no executory process could issue thereon; and as between the parties to this suit it is

not an instrument containing the clauses and obligations EASTERN DIS.
*June*, 1834.

GODDARD'S
HEIRS
*vs.*
URQUHART. which by the Spanish law could be enforced in the *via executiva*. It is simply a personal obligation.

17. Even admitting the prescription in actions like this to be twenty years this action is prescribed. The act by which the mortgage was released is dated July 8, 1807, so that the prescription of twenty years was complete in 1827. It is urged prescription did not run against Goddard until he came of age in 1815, as he was a minor. He claims his mother's estate which was a vacant one since 1806, when she died, and prescription runs against vacant estates.

18. By the *Partidas* prescription run against minors when not under the paternal power. *Partida* 3, *tit.* 29, *l.* 8. *Com. G. Lopez.* The minor lived in a common law state, was not prevented from suing, particularly as he was not under the paternal power.

19. The prescription under the Spanish law was interrupted by the promulgation of the Louisiana *Code* in May 1825. In relation to the plaintiff's claim the prescription under both systems was the same. Under the *Code* it run against vacant successions, and barred all personal actions by the lapse of ten years, when present, and twenty years against absentees.

20. It is a well settled as well as an equitable principle in relation to prescription, that the change of law does not deprive parties of the benefit of the *time* of prescription acquired, although the term be not completed. The time acquired under the old law is to be added to that acquired under the new law, in the proportion that each *time* bears to the *term* required by the old and new laws. The *Napoleon Code* expressly declares how prescription is to be computed in the concluding article (2281.)

21. But in cases of *delits contraventions et crimes* the question was left to be decided on principles of law, and by these principles the rule stated has been established and acted upon by the court of Cassation in France. *Vide Merlin's Rep. de Jurisprudence (ed. of* 1827) *Verbo Prescription sec.* 1. *s. III. vol.* 23, 24, *page* 100 *and seq.* See cases of Jean Tisquet and others.

EASTERN DIS.
*June,* 1834.

GODDARD'S
HEIRS
*vs.*
URQUHART.

22. From what has been said the following conclusions are clearly deducible:

1. That on the merits this case is with the defendant; and the verdict of the jury should not be disturbed.

2. The Spanish law as well as the *La. Code* declares that the prescription of personal actions is *ten years.*

3. That in this case, the cause of action arising out of a vacant estate, prescription runs from the date of the act sued on.

4. That by the Spanish law, prescription run against minors not under the paternal authority.

5. That this case is barred by the prescription of ten and twenty years.

6. That according to the principle acted on by the court of Cassation in France, the prescription acquired under the old law is computed as so much in proportion to the whole time, acquired under the new.

*Preston,* in reply and conclusion for the plaintiff.

1. There is but one point in the argument of defendant's counsel to which any thing can be added in reply. It assumes that this claim is for a vacant estate of plaintiff's mother, and invokes our law of prescription as applicable to and running against vacant estates.

2. If this claim were the vacant estate of the ancestors of Goddard, his acceptance of the estate would have "a retroactive effect, that is to say, he would be considered as having taken possession of the estate at the time the succession was opened by the death of his mother," and being a minor from that period his minority would interrupt the prescription. *Old Code p.* 160, *art.* 72.

3. But the real fallacy of the argument consists in considering this claim, the vacant estate of Goddard's mother. Her estate was not here, but in South Carolina; it was not vacant, but descended to Thomas F. Goddard, proved to be her only heir; the demand against the defendant was not the estate but a claim belonging to the estate or rather to the minor.

EASTERN DIS.
June, 1834.

GODDARD'S
HEIRS
vs.
URQUHART.

4. It is an error from the very beginning of the defence to apply the provisions of our law *made* for minors and their property who are residents in Louisiana, to minors abroad for whom they were not made, and with regard to whom it is impossible to carry one half the provisions into effect, as a few minutes reflexion upon them would teach.

5. The true view of this case is this: did Mr. Urquhart receive five thousand dollars belonging to the grand mother of the defendants? Have they succeeded to their grand mother in South Carolina? If so, the claim is a right personal to them there. Who can sue for them here? Their mother? Is the claim barred by prescription under our laws? I have shown it is not.

MARTIN, J., delivered the opinion of the court.

The facts of this case are as follow : John Almond died in the territory of Orleans, in 1805; leaving a daughter who lived in South Carolina, who was at first married to William Goddard, by whom she had a son Thomas F. Goddard; on the death of whose father, his mother married John Paisley. She being the sole heir of Almond, whose estate was administered by the defendant, who early in 1806 sold several slaves, part of the estate, to judge Prevost, and took his note at twelve months for the price. Soon after Paisley came to Louisiana, and the defendant rendered him an account, which was examined and approved by the court, which ordered him to pay the balance and surrender all the notes and papers of Almond's estate to Paisley. This being done the defendant was discharged from the administration and his bond cancelled. During the summer of the following year, the defendant by notarial act raised the mortgage he had taken on the slaves sold to Prevost, and acknowledged the receipt of the consideration of the sale as *executor* of Almond. Paisley and his wife died soon after the discharge of the defendant, in the summer and fall of 1806. In 1830 Thomas F. Goddard, Mrs. Paisley's only son by her first husband, and the grandson of Almond, brought the present

EASTERN DIS.
June, 1834.
═══════════
GODDARD'S
HEIRS
vs.
URQUHART.
suit for the recovery of five thousand and ten dollars, the price of the slaves sold to Prevost.

The defendant pleaded the general issue; and that he had long ago paid over all the monies and effects he had received on account of Almond's estate; and finally opposed the plea of prescription.

The first jury could not agree on a verdict: a second found for the defendant. An unsuccessful effort was made to set aside the verdict, but the District Court declaring itself satisfied with it, gave judgment accordingly.

Thomas F. Goddard died *pendente lite;* his heirs came in and are the appellants from the judgment.

Their counsel has contended that it is clearly proved that the defendant received the money claimed, that there is not a tittle of evidence that he paid it, and it is in proof that the appellants are entitled, mediately through their deceased father, to the estate of Almond, their great grand-father: that the original plaintiff was born in 1794, and became of age in the month of November, 1815, so that at the inception of this suit prescription did not bar the claim, and the action thereon: the promulgation of the Louisiana Code in the spring of 1825, having established the period of *twenty years* for the prescription of his claim as he resided out of the state, and the code having abrogated all prescriptions not mentioned in the code itself.

On the part of the defendant and appellee it has been contended, that this action is prescribed; that by the law of the 3d *Partidas, tit.* 29, *l.* 22, *thirty years* is the period, the lapse of which operates the prescription of debts, but this was altered by the *Ordenamiento Real,* 3, 13, 3, promulgated in 1386; *thirty years* after the *Partidas;* and that all debts are by this last law declared to be prescribed by the lapse of *ten years.* The 63d law of *Toro,* however, changed the period as to debts resulting from instruments importing a confession of judgment, leaving the period of *ten years* that of prescription as to the right of suing out execution in the *via executivia,* and extending the period for bringing the personal action in the *via ordinaria* to *twenty years, &c.*

*Gomez,* in his commentary on the 63d law of *Toro,* expressly states that it does not repeal the law of the *Ordenamiento Real,* with regard to debts resulting from chirographery or private writings, which he says are still prescribed by the lapse of *ten years.* When the 63d law of *Toro* was placed in the *Recopilacion,* a clause was inserted that the period of *twenty years,* is that of the prescription, notwithstanding the law of the *Ordenamiento Real;* a clause which the counsel considers as indicative of the opinion of the sovereign, that the law of the *Ordenamiento Real,* afforded the legitimate rule of decision in all cases before the law of *Toro;* and that it is repealed in those cases only, in which the law of *Toro* operates, *i. e.* in cases of debts resulting from an instrument importing a confession of judgment.

The counsel has contended further, that the notarial act by which the defendant raised the mortgage on the slaves is not as to the parties to the present suit, an instrument importing a confession of judgment; that it is *res inter alios acta;* that it proves merely *rem ipsam, i. e.* that the defendant made the acknowledgment which the act contains, and may be used to establish that fact, but the plaintiff's must show, *aliunde,* evidence of their right to the money.

It has been further urged that although the full period had not elapsed for the acquisition of prescription, a few months more being wanting, the code has not deprived the defendant of the faculty of adding the time which had elapsed before its promulgation to that which has run since; reckoning each period according to the law in force at the time it ran; that when a new law alters the period of prescription, whether it makes it shorter or longer the time which elapsed before the change, is to be reckoned according to the former law and *vice versa.* Such appears to have been the practice under a decision of the Court of Cassation in France. *Merlin's Répertoire de Jurisprudence, Verbo, prescription. Sec.* 1, *sec.* 3.

The counsel has concluded that if the prescription was not completely acquired, the defendant might urge the long time which has elapsed between the time at which the debt,

85

EASTERN DIS.
June, 1834.

GODDARD'S
HEIRS
· vs.
URQUHART.

if ever existed, arose, and the demand; upwards of twenty odd years, as a presumption so violent that it may be considered as full proof that the debt never existed, or that it has been *satisfied*.

It has appeared to us that duty does not require from this court the reversal of the judgment appealed from. The counsel has shown that the prescription under the Spanish law, of debts on simple contract under private signature was *ten years;* and we cannot adopt the proposition of the counsel of the appellant that the *Civil Code* of 1808, *art.* 65, *p.* 486, restored the prescription of all debts to the original standard fixed by the *Partidas, viz: thirty years.* That article shows indeed that that number of years is the *longissimum tempus,* after which all actions real and personal are prescribed; but it does not repeal prescriptions theretofore existing, although attached to a shorter length of time.

Under our present code the prescription which the defendant may avail himself, is that of twenty years.

We believe we give a sound construction to our Code, in adopting the opinion of the Court of Cassation in France, which determines that in all cases in which the article 2281 of the *Napoleon Code* was not applicable, the time which preceded the change of legislation or altering the period of prescription, should be reckoned according to the ancient law, and that which followed according to the new law.

In this manner, nine years and seven months having elapsed between the date of the act by which the defendant raised the mortgage on the slaves, and the promulgation of the Louisiana Code; and ten years being theretofore the period of prescription, five months were required to complete the prescription; and as under the Louisiana Code, the plaintiff residing out of the state, the period of prescription is twenty years *i. e.,* double what it was before, the plaintiff in the present case was bound by the lapse of ten months after the promulgation of the Louisiana Code.

On the merits it appears that the jury might well infer from the great length of time, to which the demand was protracted, that the debt never existed or was paid. The

Phe prescription under the Spanish law, of debts on simple contracts resulting from chirography or private instrument of writing is ten years.

The *Civil Code* of 1808, *art.* 65, *p.* 486, which provides that *all actions, &c.,* are prescribed after thirty years, does not repeal the previous law which prescribes personal actions, debts on simple contracts, &c. after a lapse of ten years.

Under the *Louisiana Code,* the prescription of personal actions and debts evidenced by chirography instruments, is twenty years against persons residing out of the state.

Where the law is changed aster prescription begins to run, the time which elapsed under the law preceding the alteration is to be computed according to that law, and that which follows is to be reckoned according to the new law; and the time acquired under the old law is to be added to that acquired under the new law, in the proportion that each *time* bears to the *term* required by the old and new laws.

So in a personal action in which the prescription under the Spanish law is ten years, and seven months having expired,

EASTERN DIS.
June, 1834.

testimony in a certain degree, leads the mind to the first alternative. The note of the purchaser of the slaves, had been surrendered by the defendant. From the testimony it may be inferred he did not receive the amount. His signature was wanted to raise the mortgage, and the acknowledgment that he received the money, may have been inserted in a clause of style. All this raises a suspicion that the claim did not exist; and the improbability of its having existed for nearly the quarter of a century, forms in favor of a defendant of an irreproachable character, ever able to pay every fair claim against him, *animo opibusque paratus*, a very strong presumption which was entitled to great weight with the jury.

*In an action on a notarial instrument, executed by the defendant to a third party to raise a mortgage when he had surrendered up the debt for which the mortgage was given, but in which he acknowleges the receipt of the money; after a lapse of twenty-three years before suit, a jury may well infer from this great length of time, corroborated by circumstantial proof that the debt never existed, or has been paid, and their verdict for the defendant will not be disturbed.*