DAVIS'S HEIRS vs. ELKINS. ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The word *estate*, used in the English text of the Civil Code, has the same meaning as the term *succession* in the French text. It is defined to be, " the estate, rights and charges, which a person leaves after his death." *Old Civil Code, page* 144, *article* 2.

Vacant estates are to be administered by curators appointed for that purpose. But prescription runs against a vacant estate, though no curator has been appointed.

A vacant estate is a fictitious being, representing in every respect the deceased, who was the owner of the estate, until the acceptance or renunciation of the inheritance by the heir, and is prescribed by the lapse of ten years before any act of acceptance.

Where property of a vacant estate has been sold by the surviving partner of the community, and held by the purchasers under a just title, and possessed in good faith, *animo dominorum* for *ten* years, the claims of the heirs of the succession, afterwards set up to the property, will be barred by the prescription of ten years.

If an inchoate right once begins under the existing laws of prescription, a subsequent law cannot be made to operate so as to destroy it.

The provisions in the Louisiana Code, articles 934 and 936, calling the heir to the inheritance, and giving him the seizin of the succession, immediately on the death of the ancestor, do not destroy the provision concerning vacant estates. No one can be compelled to accept a succession, and until acceptance or renunciation, the rights of the heir as regards inheritance, seizin and possession, &c., are suspended.

The provision in the Civil Code of 1808, defining a vacant estate to be a fictitious being representing the deceased, is not contained in the Louisiana Code, promulgated the 20th June, 1825.

An action in which the plaintiffs simply allege themselves owners of property in common with the defendants, cannot preclude the latter from disputing the rights of the former and setting up title in opposition to the claim made. It is, in this respect, an action of revendication and not of partition, and involves the prescription of ten and twenty years.

Eastern Dist.
*February,* 1836.

Davis's Heirs
*vs.*
Elkins et al.

A vacant estate being a fictitious person representing the deceased, according to the Civil Code, prescription runs against it, instead of the heirs.

The law protects rights acquired by third persons, to property of an estate which is afterwards accepted by the heir, between the opening of the succession and the time of such acceptance; and amongst these rights, are those acquired by prescription.

This is an action of revendication. The plaintiffs, heirs and legal representatives of Marcia Davis, deceased, late wife of George W. Dewees, on the 13th of March, 1833, instituted suit to recover the one undivided moiety of four and a half lots of ground in New-Orleans, in the possession of the defendants.

The plaintiffs show, that in the year 1800, George W. Dewees and Marcia Davis, were married in the city of Philadelphia, and shortly afterwards removed to this state, then Territory of Orleans. That during their residence here and the existence of the community of acquests and gains, they acquired the lots and property in question. While the community lasted, and during their possession of said property, in the month of September, *1813,* Marcia Davis, *the wife of* Dewees, died without issue. The present plaintiffs, the descendants and heirs of her father and mother, claim her half of the community property in possession, and belonging to the spouses at her death.

No inventory was ever taken of the succession of the wife, or partition made of the community property. In 1815, Dewees sold the property in. question at private sale, to W. C. Withers and Harvey Elkins. In 1817, Elkins sold to his co-proprietor, Withers, his half of the ground. Since Wither's death, in 1830, Joseph M. Kennedy purchased the disputed premises from the universal legatees of Withers. In 1832, he again sold to Harvey Elkins.

Elkins pleaded a general denial, and avers that he is in possession under a just title and in good faith. He calls Kennedy in warranty.

Kennedy pleaded the general issue to the petition and answer calling him in warranty. He denies the heirship

and right of the plaintiffs to sue, and sets up his title as derived from the universal legatees of Withers, whom he calls in warranty. These last warrantors called in Elkins again, for the undivided half of the lots he had sold to Withers.

Kennedy amended his answer, and pleaded the prescription of ten years, against the plaintiffs' right to recover. He averred that Withers and Elkins acquired the property from Dewees, in good faith and by a just title. That the succession of Mrs. Dewees is vacant, the heirs being unknown and absent from the State of Louisiana at her death; and that vacant estates are prescribed in ten years.

Upon these pleadings and facts, the case was tried by agreement, as between the plaintiffs and Withers and Elkins, the immediate vendees of Dewees.

The district judge presiding, decided that the defendants having acquired in 1815, under a just title and in good faith, the property in question, and no attempt having been made to accept the succession of Marcia Davis, until the institution of this suit in 1833, that the defendants have acquired a title by prescription against the succession as a vacant one, which entitles them to be quieted in their possession.

Judgment was rendered for the defendants. The plaintiffs appealed.

*L. C. Duncan* and *J. Slidell,* for the plaintiffs.

1. This is an action of partition, and as such, subject only to the prescription of thirty years. 3 *Martin,* 97.

2. The plaintiffs, as absentees, can only be bound by a prescription of twenty years. *Old Civil Code, page* 86, *art.* 67.

3. If the succession was a fictitious being representing the deceased in every thing, then prescription is suspended against her heirs until the death of Dewees, as action would be prejudicial to her husband. *Civil Code, page* 486, *art.* 60.

*Eustis,* for the defendants, called in warranty.

1. The succession of Mrs. Dewees, from the period of her decease to the institution of the present suit, was a vacant

EASTERN DIST.
February, 1856.
────────────
DAVIS'S HEIRS
vs.
ELKINS ET AL.
succession, *heriditas jacens* of the civilians. *Civil Code of 1808, page* 172, *art.* 118. *Louisiana Code, art.* 1088. 1 *Salgado, page* 219, *chap.* 32, *sect.* 20-1. *Code Napoleon, art.* 811-12.

2. The *vacant* succession *represents the person of the deceased,* until it be accepted. *Civil Code of* 1808, *page* 162, *art.* 74. 1 *Salgado, page* 218, *chap.* 32, *sec.* 3-4.

3. Ten years prescription is ' sufficient to protect the defendants in their property : they having possessed in good faith and under a title *translatif de propriété. Code, lib.* 6, *tit.* 30, *law* 22, *sect.* 11, *de jure deliberandi. Civil Code of* 1808, *page* 86, *art.* 62. *Louisiana Code, art.* 3492. *Code Napoleon, art.* 2259.

4. The heir accepting the vacant succession, takes it *cum onere,* subject to all the rights of prescription acquired against it. 1 *Salgado toc. cit. sect.* 25. *Civil Code of* 1808, *art.* 72, *page* 160. *Ibid. art.* 95, *page* 164. *Louisiana Code, art.* 1024. *Code Napoleon, art.* 790. *Code, lib.* 6, *tit.* 31, *de repudiendâ vel abstinendâ hæreditate.*

*Conrad,* on the same side, contended.

1. That the succession of Marcia Davis, late wife of G. W. Dewees, was vacant, and that the action of the plaintiffs was prescribed by the lapse of ten years. *Civil Code, page* 384, *art.* 62, 67. 1 *Vazeille, Traité des prescriptions, No.* 73.

2. It is attempted to be shown that this is an action of partition, and only barred by thirty years prescription. But this is not an action of partition; none of the formalities required for a judicial partition have been fulfilled. No inventory, appraisement, report of experts, or prayer for a partition in kind or by licitation, appears in the pleadings or the record.

3. An action of partition is instituted by one part owner against another, to compel a division of property acknowledged to be owned and held in common. This suit is brought for the express purpose of recovering and having the plaintiffs recognized as owners of one half of the property in question. The former action, it is admitted, is imprescriptible. This

one is barred by the prescription applicable to possessors under
a just title and in good faith.

*Hennen* and *Mazureau,* for Kennedy in warranty.

*D. Seghers,* for the plaintiffs in reply.

1. It is not denied that under the *Old Civil Code*, a vacant succession was considered a fictitious being, representing the deceased, and that prescription run against it. Nor is it denied that it was only by his acceptance that the heir became of right seized of the property, rights and actions, of the deceased.

2. But it is contended by the plaintiffs, that the adoption of the *Louisiana Code*, in lieu of the Civil Code of 1808, has made a material change in this part of the law. By the Louisiana Code, the heir is considered as having succeeded to the deceased, and consequently to all his rights from the moment of his death. See *Louisiana Code, art.* 934 *et seq.* 2 *Louisiana Reports,* 302.

3. The Louisiana Code was promulgated and in force on the 20th June, 1825. Admitting for argument's sake, that prescription began to run from the 30th July, 1815, the day of the sale by Dewees, the surviving husband, there were still forty days wanting on the 20th June, 1825, to complete the prescription of ten years against the vacant estate.

4. It is by no means clear that prescription *begins* to run against a vacant estate, for the law pre-supposes a case where the prescription *had begun* against the deceased in his lifetime, and continued running after his death against his succession.

5. Be this as it may, it is contended that on the 20th June, 1825, by the adoption of the Louisiana Code, that fictitious being, against whom prescription runs, was no longer in existence. From that day, the heirs of Marcia Davis were seized of the rights and possession of her estate. From that day prescription ceased to run; especially as many of the heirs were minors. *Louisiana Code,* 934, 936, *et seq.*

6. By the Louisiana Code, the heir being seized of the succession in right, is considered as the heir so long as he

manifests no disposition to divest himself of this right by renouncing the succession.  *Louisiana Code,* 1007.

DAVIS'S HEIRS
*vs.*
ELKINS ET AL.

*Mathews, J.,* delivered the opinion of the court.

In this case the plaintiffs claim as heirs of Marcia Davis, late wife of George W. Dewees, an undivided half of certain real property described in their petition which made a part of the matrimonial community of acquests and gains acquired during the marriage, and to which they allege title as having succeeded to the rights of Mrs. Dewees, who died in 1813.

The answers of the defendants contain, all of them, a general denial of the facts alleged in the petition, and in many of them prescription of ten and twenty years is pleaded. The court below decided the cause in their favor on the plea of prescription, and the plaintiffs appealed.  The case has been argued before us solely on this ground, and we shall consequently examine no other.

Dewees, the husband, remained in possession of the property which had been acquired during the marriage, without taking any steps tending to show that it belonged to the matrimonial community, by inventorying the succession of his deceased wife, or making any attempt to cause a division of the community to be made, either amicably between him and her heirs, or by legal process.  Indeed her heirs seem to have been entirely unknown to the public, until about the time of the institution of the present action in 1833.

Dewees continued in possession of the premises now in dispute, in the manner above stated, from the death of his wife in 1813, until the 30th of July, 1815, when he sold them to W. C. Withers and H. Elkins.  The latter, afterwards, for a valuable consideration, conveyed his rights in the property to the former, &c.  The defendants hold under title derived from these purchases.

The present suit was begun not before the 13th of March, 1833, and for any thing appearing to the contrary, was the first time that any claim was made by the plaintiffs as heirs of their deceased relation, to the property now in litigation, having never previously done any act which can be construed

as an acceptance of her succession, either absolute or with benefit of an inventory.

These are the facts on which the plea of prescription is founded. It now remains for us to ascertain whether it can be supported by the provisions of the laws which were in force at the time of the sale from Dewees to Withers and Elkins, relating to the acquisition of things held under a title translative of property, and possessed in good faith; and whether the rules then existing have been changed by the La. Code of 1825, in such a manner as to affect injuriously the claim of the defendants.

We think it may be safely assumed as a truth, induced by comparison, that the provisions of the laws previously in force in this country, and those of the Civil Code of 1808, are in accordance on the subject of prescriptions; especially in relation to that now pleaded, and all things necessary to give it effect and validity. But if any material alterations were made by the posterior legislative enactments, they must prevail. We shall, therefore, look mainly to our own codes of law, as guides in the question under consideration.

The prescription pleaded, is assumed as one running against a vacant succession, or *hereditas jacens,* as representing in all respects the deceased owner. To make good this plea, it must be shown that the succession claimed by the plaintiffs was vacant for ten years after the sale to the defendants, and that it represents the deceased owner, and not the heirs, according to legal intendment. Also, that the title under which the defendants hold, is one translative of property, and that they and those under whom they claim, have possessed it peaceably and in good faith, *animo dominorum,* the time required to give title by prescription.

The truth of these last propositions is fully ascertained by a mere reference to the facts stated in the commencement of this opinion. The only question remaining to be solved, is, whether according to a just interpretation of our laws, they must produce the same effect on the rights of claimants to a succession in the capacity of heirs, which has remained vacant during the time necessary to acquire by prescription, that

would have been operated on the rights of an owner living and present in the state?

The statement of this question seems to take for granted, that the succession in the present instance was vacant. It will, perhaps, be well to support this assumption by quotations from the law.

The definition of a vacant estate, is found in the Old Civil Code, page 172, art. 118, and appears to be clear and explicit. "An estate is said to be vacant, when no person claims its possession, either as heir or under any other title." The word estate used in the English text, has the same meaning as succession in the French, and has this signification given to this word in the Old Code, page 144, art. 2, viz: "The estate, rights and charges, which a person leaves after his death," &c.

*The word estate used in the English text of the Civil Code, has the same meaning as the term* succession *in the French text. It is defined to be, "the estate, rights and charges, which a person leaves after his death." Old Civil Code, page 144, article 2.*

Now it is fairly deduceable from the facts of this case, that no person claimed the estate of Mrs. Dewees, from the time of her death, in 1813, until the institution of the present suit in 1833. It was, therefore, vacant during the whole of that period. We are thus brought to the consideration of the principal question in the cause: Can title be acquired to any part of a vacant estate, by showing one translative of property given by a person, not the owner, and uninterrupted possession during the length of time required to complete prescription? An affirmative answer to this question, is found in express terms, in the Code already cited, in article 62, page 486. Vacant estates, according to legal provisions, are to be administered by curators appointed for that purpose. The article last cited, declares that prescription runs against a vacant estate, though no curator has been appointed. It is expressed in the following words: "Prescription does not run against a beneficiary heir with respect to the debt due him by the estate. But it runs against a vacant estate though no curator has been appointed for said estate." This article is found in the section of the Code which treats of the causes which suspend or interrupt prescriptions, and has relation both to the prescriptions by which property may be acquired and those *liberandi causâ*; and although from the

*Vacant estates are to be administered by curators appointed for that purpose. But prescription runs against a vacant estate, though no curator has been appointed.*

first clause in it, being clearly applicable to the last kind of prescriptions, it might be urged that the subsequent clause also relates to them only, yet it is general in its expressions and cannot be limited by any just and reasonable interpretation.

The general belief, however, in relation to prescriptions *acquirendi causâ* is, that they can only run against an owner of full age during his lifetime, and persons (in the same category) who represent him after his death, and that it would be absurd to make them run against mere inanimate matter or things constituted without reason or moral agency. It must indeed be admitted, that there is something paradoxical in the provisions of our law, which declare that a moral agent who is dead, shall be represented in all respects by unthinking and inert matter. But this is a fiction in our jurisprudence, and legal fictions are not unusual in many systems of law, adopted for the preservation of rights to property, and in aid of the administration of justice; and when they subserve these purposes, it is a matter of no consequence what may have been the motives which led to their introduction, whether they had their first origin in the tricks of the learned and cunning, with the intention of forcing the ignorant to pay them for their services in conducting litigation, or whether they were introduced with a sole view to the good of the public, by preventing legal contests, and thus quieting owners in their rights and possession of property. The fiction in the present instance appears to us to be of the latter class, but whether or not it makes a part of laws by which the community must be bound. In its prescriptive operation it has evidently a tendency to the desirable ends just stated. This is the first time that the courts of judicature of the state have been directly called upon to give an interpretation to and apply the rules resulting from this fiction to a case. And this is probably the reason why we approach the subject with diffidence, as it belongs to the human mind to be cautious and circumspect in admitting the truth of new doctrines.

A vacant estate is a fictitious being, representing in every respect the deceased, who was the owner of the estate, until the acceptance or renunciation of the inheritance by the heir, and is prescribed by the lapse of ten years before any act of acceptance.

Where property of a vacant estate has been sold by the surviving partner of the community, and held by the purchasers under a just title, and possessed in good faith, *animo dominorum* for *ten* years, the claims of the heirs of the succession, afterwards set up to the property, will be barred by the prescription of ten years.

The Code of 1808 declares, "that nobody can be compelled to accept a succession in whatever manner it may have fallen to his share," &c., *page* 160, *article* 71. "Until the acceptance or renunciation the inheritance is considered a fictitious being representing, *in every respect,* the deceased, who was the owner of the estate," *page* 162, *article* 74. And we have already seen that according to *article* 62, *page* 486 of the same code that prescription runs against a vacant succession. We have now obtained, from a statement of the facts of the case and from the laws as they were in force to the 20th of June, 1825, all the postulates necessary to support the judgment of the court below, viz : From the facts that the defendants hold the property in dispute under a just title or one translative of property, and that they have been in peaceable and uninterrupted possession for more than ten years, as possessors *animo dominorum.* From the law, according to the definition of the Code, that the succession of Mrs. Dewees remained vacant from the year 1813 until 1833 ; that this succession being so vacant, is a fictitious being representing her in every respect, and that prescription runs against it.

We will now, before examining and passing on the points filed on the part of the plaintiffs, proceed to a comparison of the provisions of the new *Louisiana Code* with those of the *Old Civil Code* of 1808, on the same subject of successions, which the plaintiffs allege have introduced rules calculated to repeal those which previously existed, and which properly interpreted will have the effect to destroy the claim of the defendants, as their title by prescription was not complete by lapse of time at the period of the adoption of the Code of 1825.

Previous, however, to commencing this investigation and comparison, it may be proper to state, that we are not aware of any material difference between the provisions of the two codes, in relation to the prescription of ten and twenty years, touching real property, except the shortening of it in regard to slaves. It might also be seriously questioned, whether any provisions of posterior laws can justly be so construed,

in regard to prescription, as to produce an abrogation of the rules previously established for the acquisition of property. They certainly operate on the rights of parties, rather than on remedies to enforce obligations. If a right has once begun to exist, although it may be inchoate and not perfected, we are not able to conceive how, by any rational interpretation, consistent with just rules on this subject, a subsequent law can be made so to operate, as to destroy it. In the present case, allowing the promulgation of the new Louisiana Code to have been made on the 20th of June, 1825, only forty days were required to complete the title of the defendants, by the prescription of ten years. But this perhaps is not one of the *minera de quibus non curat lex.*

The alteration made in the last code concerning successions, on which the counsel for the plaintiffs relies, is that provision which gives seizin to the heir on the death of the ancestor.

The articles of the Louisiana Code which relate to this subject, are very strong in their expression. Article 934 declares that "a succession is acquired by the lawful heir, who is called by law to the inheritance, immediately after the death of the deceased person to whom he succeeds:" 936, "the heir being considered seized of the succession from the moment of its being opened, the right of possession which the deceased had, continues in the person of the heir, as if there had been no interruption, and independent of the fact of possession."

If these articles be strictly construed, they will defeat and annul all those which relate to vacant estates, and seem to contravene those also on the subject of acceptance and renunciation of successions. One of the rules of interpretation is, that laws in *pari materia* must be construed together; and another is, that effect must be given to all their provisions, unless in doing so, it would result in gross absurdity. If they cannot be reconciled, which of them must yield?

Let us now look to other articles of the code, in relation to successions. It is declared by article 970, that "no one can be compelled to accept a succession, in whatsoever manner it may have fallen to him. The definition of a vacant

EASTERN DIST.
*February*, 1836.

DAVIS'S HEIRS
*vs.*
ELKINS ET AL.

If an inchoate right once begins under the existing laws of prescription, a subsequent law cannot be made to operate so as to destroy it.

succession found in the Louisiana Code, is substantially the same as that which we have cited from the old Civil Code, article 1088: "a succession is called vacant when no one claims it, or when all the heirs are unknown, or when all the known heirs to it have renounced it." Here it may be pertinently asked, how a person can refuse to accept a thing of which the law has given to him absolute seizin, both in relation to rights and possession? or rather, what necessity for such acceptance, and how can it effect his rights? and if the heir, whether known or unknown, absent or present, has by mere operation of law, full seizin of the succession, both as to rights and possession, how is it possible that there can be any such thing as a vacant estate in this country? Yet the implication from the article in relation to acceptance, is irresistible that such acceptance is necessary to perfect the title of the heir to the inheritance, at all events he probably cannot be involved in any of the obligations of the ancestor to other persons, without acceptance; and it is clear from the other article cited, that there may be such a thing as a vacant estate.

The article 940 seems, however, in some degree to prevent the conflict, which would have been inevitable between the articles 934 and 936 and the articles 970 and 1088; for it suspends all the rights of the heir, until he decides whether he accepts or renounces the succession. This article, by virtually annulling or rendering inoperative the previous articles 934 and 936, relieves us from the troublesome task of solving the questions above stated, and endeavoring to reconcile those provisions of law so apparently contradictory, and leaves the main question in the cause, nearly in the same predicament in which it was under the old Civil Code of 1808. We will, therefore, desist from any further consideration of the provisions of the Louisiana Code, in relation to the questions which have been raised by the pleadings in the present case. It does not appear that the fictitious being created by the Civil Code of 1808 has been kept alive by any provision of that of 1825. But in our opinion, it lived long enough, and represented the ancestor of the plaintiffs a

The provisions in the Louisiana Code, arts. 934 and 936, calling the heir to the inheritance, and giving him the seizin of the succession, immediately on the death of the ancestor, do not destroy the provision concerning vacant estates. No one can be compelled to accept a succession; and until acceptance or renunciation, the rights of the heir as regards inheritance, seizin and possession, &c., are suspended.

The provision in the Civil Code of 1808, defining a vacant estate to be a fictitious being representing the deceased, is not contained in the Louisiana Code, promulgated the 20th June, 1825.

EASTERN DIST.
February, 1836.

DAVIS'S HEIRS
vs.
ELKINS ET AL.

length of time sufficient to give the defendants a title to the property in litigation by prescription, especially as the same provision, allowing prescription to run against a vacant estate, exists in both codes. See *Louisiana Code, article* 3492.

We come at last to the examination of the objections made in the points filed, on the part of the plaintiffs, in this court.

The first is, that this is an action of partition, and as such subjected only to the prescription of thirty years.

2. That the plaintiffs, as absentees, can only be bound by the prescription of twenty years.

3. If the succession was a fictitious being, representing the deceased in every thing, then prescription was suspended against her heirs until the death of Dewees, as any action brought by her would be prejudicial to her husband.

In answer to the first of these objections to the prescription of ten and twenty years, it suffices to observe, that the primary object of this suit appears to be to settle the right of property in the disputed premises, between the parties litigant. If this were determined in favor of the plaintiffs, these being joint proprietors with the defendants, a partition might, perhaps, have been decreed in the same suit, according to the prayer of the petition. But simply stating themselves as owners in common with the defendants, cannot preclude the latter from disputing the rights of the former, and setting up title in opposition to the claim made. It is in this respect, primarily, an action of revendication, involving the prescription of ten and twenty years.

The second point is completely answered by the law which makes the fictitious being the representative of the deceased, not of the heirs.

The third involves an absurdity in its very terms, by considering Marcia Davis as the wife of Dewees, after the marriage had been dissolved by the death of the former. This error can only be accounted for by the paradoxical attributes given to the fictitious being by creation of law; although it may be admitted that some individuals are extremely enamoured with their property, it is hard to conceive on what principles a tract of land may be admitted to hold

*An action in which the plaintiffs simply allege themselves owners of property in common with the defendants, cannot preclude the latter from disputing rights of the former, and setting up title in opposition to the claim made. It is, in this respect, an action of revendication and not of partition, and involves the prescription of ten and twenty years. A vacant estate being a fictitious person, representing the deceased, according to the Civil Code, prescription runs against it, instead of the heirs.*

the place of a man's wife. The general expression in every. respect must not be so construed as to lead to absurdities not supportable on any rational grounds, and in violation of the order of nature.

Some reliance seems to have been had by the counsel of the plaintiffs, on the right granted by law to heirs, to accept an inheritance at any time before they may be precluded by prescription, and that such an acceptance relates back to the time when the succession was opened. But the law protects rights legally acquired to any part of it by third persons, between the opening of the succession and the time of acceptance, and amongst those rights is expressly secured, that which may have been acquired by prescription.

*The law protects rights acquired by third persons, to property of an estate which is afterwards accepted by the heir, between the opening of the succession and the time of such acceptance; and amongst these rights, are those acquired by prescription.*

We have been referred to two cases to be found in 7 *Louisiana Reports*, one at page 216, and the other at page 292.

In the first of these it was said, that on the death of one of the spouses, the community, in a legal sense, is unquestionably terminated. Each party is seized of one undivided half of the property, and the survivor cannot validly alienate the part not belonging to him. This is true, that the portion not belonging to the survivor, cannot be by him sold and conveyed, so as, *ipso facto*, to give a legal and valid title to the purchaser, because the seller had none. But the question, whether a deed of sale made by him may not form the basis of prescription, is not touched in the opinion given by the court in that case.

The opinion in the other case cited, relates to a succession which was opened under the new Code, and the present case is decided entirely on principles established in the old Civil Code.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.