Simon, J.
We are called upon to reverse a judgment rendered in favor of the defendants, by which they are quieted in their title to, and possession of, a tract of land claimed of them by the plaintiffs in the right, and as the legal heirs and representatives of their deceased mother.
The facts of the case are these: Mary Mayes, wife of Anthony Calvit, died in May, or about the first of .Tune, 1816 : she left four children, the issue of her marriage, to wit: William J., Elizabeth G., James A., and Coleman W. Calvit, who are the plaintiffs in this cause. Among the property which the spouses possessed at the time of the dissolution of their marriage, there was a tract of land of 340 superficial arpents, being six arpents front on both sides of bayou Boeuf, having on the east side a depth of 40 arpents, and on the west side such a depth as to make 100 superficial arpents, which "r,ie'the existence of the marriage, and was coir^nuAn-thony Calvit, after the death of his wife&b^Kune the natural tutor of his children, and continued to bel» finf c^||$tí¡iy\pro-perty in his possession, without taking ajftrstep, for aught ijjap-pears, to open the succession of his dec%ised^[5Lj|iB-lle»®tme of his children, who were all minors, andN^Taced bybyp'Tinder his natural tutorship. It is not shown thatReT^r made any inventory ; and if any proceeding ever took place in relation to the estate of his wife inherited by the plaintiffs, none could be found in the Parish Judge’s office, or any where else.
It further appears from the evidence, that Anthony Calvit, who' was only entitled to one-half of the tract of land above described, sold the whole of it, on the 2d of March, 1820, to one Davis, under whom the defendants claim through divers mesne conveyances ; and that said defendants, as well as those under whom they claim, have always peaceably and uninterruptedly possessed this property from the date of the act of sale from Calvit to Davis, up to the 23d of April, 1838, when the present suit was instituted to evict them from an undivided half thereof.
The defendants rely upon the prescription of ten years, which they contend was acquired by them, and by their authors, against the succession of the plaintiff’s mother, considered as a vacant estate, long before the institution of this suit; but, in the event *260 of eviction, they pray that they may be compensated for the value of improvements, &c., put upon the land. All the successive vendors of the property in dispute, were also regularly called in warranty, up to Anthony Caivit himself, who joined issue by denying all the allegations contained in the plaintiffs’ petition.
The record shows, that James A. Caivit was born in the year 1800; he, therefore, became of age in 1821. Elizabeth G. Cai-vit was bom in 1804; she became of age in 1825. James A. Caivit was born in 1813 ; he became of age in 1834. Coleman W. Caivit was born in 1815, and he became of age in 1836. It is clear then, that the prescription has run against the two eldest, as more than ten years had elapsed since their majority, before the institution of this suit. But is it so with regard to the two other plaintiffs, who only became of age in 1834 and 1836 1
It is contended by the defendants’ counsel that, according to the provisions of the Civil Code of 1808, under which the succession of the plaintiff’s mother was opened, said succession was to be then considered as a vacant one, as it was claimed by no one of her heirs ; and that, in such a case, prescription being by law allowed to run against a vacant estate, such prescription was acquired by the defendants, or those under whom they held, as to all the plaintiffs, long before the institution of this suit. The counsel relies on the case of Davis v. Elkins, (9 La. 135,) to show that Mary Mayes’ succession could not be considered in any other light but as a vacant one, against which prescription runs under the old Civil Code, as well as under the present Civil Code. art. 3492.
We are not disposed to contest the correctness of the jurisprudence established on this subject by our predecessors, under the provisions contained in the old Civil Code. We shall even give to the defendants the benefit of the time which may have run between the sale made by Caivit on the 2d of March. 1820, and the 20th of June, 1825, which is the date of the promulgation of the present Civil Code, so as to allow them five years, three months, and eighteen days, as so much time acquired under the old Code, by virtue of the right of prescription then running against a vacant estate, But the question presents itself: did not the pro *261 visions of the law. as existing under the old Code on this subject, undergo a material change by those enacted in the present Code; or, in other words, could the succession of Mary Mayes be yet considered as a vacant one, after the promulgation of the new Code? If not, the time necessary to acquire prescription, not having been completed under the former law, became suspended by the new law, and could not continue to run until the plaintiffs had attained the age of majority.
On this subject, we take it to be a true and correct' doctrine, that the time which precedes the change of legislation, or the altering of the period of prescription, should first be reckoned according to the ancient law, and that after the expiration of the suspension operated by the new provisions, it should be followed according to the new law. 6 La. 674. 11 La. 59, 61. For in-
stance : suppose that under a former law, prescription was permitted to run against minors, but that, by a subsequent law, such prescription should be suspended duriug minority, and could only begin to run from the time of majority, could it be doubted that, in such case, the new provision would have its effect so far as to suspend for the future, the time necessary to acquire prescription between the action of the new law and the age of majority ? Surely not; the right or time previously acquired would not be destroyed, for, on the contrary, it should be added to the period acquired after majority to complete the prescription under the new law. If this doctrine be correct, it is obvious that if, by the change of legislation, the succession of Mary Mayes ceased to be a vacant estate, the prescription already commenced became suspended in favor of her minor heirs, and could only continue to run after their age of majority.
It is proper to remark, that the case of Davis’ Heirs v. Elkins et al. (9 La. 135,) was decided entirely on principles established in the old Civil Code. So was the case of Poultney’s Heirs v. Cecil’s Exr.; (8 La. 411;) but the jurisprudence of this court, under the provisions of the present Civil Code, appears to be so well settled on the question under consideration that it can hardly be considered now as a new and an open one. In the case of O’Donnald v. Lobdell, (2 La. 300,) this question underwent a thorough examination; and it was there held that, under *262 the express provisions of the present Code, (which we do not deem necessary to review much at length,) the succession is represented by the heir who is seised of it, from the moment it is opened. Civ. Code, arts. 934, 935, 936, 937, 938, 939. In every one of these articles, our law recognizes that a succession is acquired by the lawful heir, immediately after the death of the person, to whom he succeeds; that this right is so acquired by the operation of the law alone, before he has taken any step to put himself in possession, or has expressed any will to accept it; thus, the right of possession which the deceased had, continues in the person of the heir, as if there had been no interruption, and independently of the fact of possession, and such right continues in the person of the heir, with all its defects and its advantages, as the change in the proprietor produces no alteration in the nature of the possession.
Under a correct application of these provisions of our laws to the present case, how can it be said that the estate of Mary Mayes was a vacant one ? Can it be pretended that a curator could have been appointed to the succession, as if it had been vacant ? Were not the heirs in possession of the property in dispute ? Was not said property in the possession of their natural tutor, who necessarily held it for them, and in their names ? To these questions, it is answered, that they took no step to claim the estate, and that, therefore, by the terms of art. 1088, of the Civil Code, it was vacant. The minor heirs of the deceased could not act by themselves ; they could only act through and by their tutor; it was his duty to take possession of the effects of the estate for them, and to preserve them for their benefit; and so he did, so far as to put himself in possession of the property; but his not preserving it to restore it to his children at the age of their majority, cannot turn to their prejudice, so as to deprive them of their rights as heirs of their mother. But the law says in positive terms, that it is not necessary to take any step to claim the succession, or to express any will to accept it; (Civil Code, art. 935 ;) and that the heir succeeds to the deceased from the instant of his death, and transmits his rights to his own heirs, although he himself have not accepted it, and even in case he was ignorant that the succession was opened in his favor. Civ. *263 Code, art. 938. This doctrine was also fully recognized in Robin v. Castillo, (7 La. 295,) and in Addison v. The Savings Bank, (15 La. 527.)
But it lias been urged that, by art. 940 of the Civil Code, the right of the heir to the succession is in suspense until he accepts or renounces; and hence, it is argued, that his right is incomplete, that is to say, that he is not vested with the inheritance so as to entitle him to keep it, unless he declares that he accepts it absolutely. This article immediately follows those which are the basis of our opinion, and which declare, that the heir acquires the succession by the mere effect of the law; and we cannot suppose that the law-maker ever intended to destroy the effect of the previous provisions, particularly as art. 940 recognizes again in positive terms that, •' the succession is acquired by the heir from the moment of the death of the deceased.” We understand this article to mean that, although the heir represents the deceased as fully as if there had been no interruption, his right to the inheritance shall only become definitive after he has accepted it, but that he shall also be at liberty to reject it. This is only a modification of the exercise of the right; it is established not only for his benefit, but also for that of the creditors of the succession; but the right exists; it is acquired by the heir who represents the déceased; and if it is suspended, it is only with a view of compelling him to declare, within the legal delays to deliberate, whether he is determined to keep the estate or abandon it. Again, the succession is represented by the heir, and therefore it cannot be vacant. There is a vast difference between an estate represented by the heir, whose right to it is only in suspense, and the fictitious being which was created by the old Civil Code, but which terminated its existence by the enactment of the present Civil Code. With regard to minors accepting or renouncing a succession, it is well known, that this cannot be done by the tutor alone, and that a succession can never be accepted for them but with the benefit of inventory; (Civ. Code, arts. 345, 346 ;) and it seems to us, that if the tutor fails to take the advice of a family meeting, the minors cannot suffer from his negligence.
In order to strengthen our position, it may be proper to re *264 mark, that it is not shown in this case that Mary Mayes owed any debt at the time-of her death, nor that any creditor was interested in causing an inventory to be made and an administrator to be appointed. Now, our law, (Civ. Code, art. 1029,) has so far provided for the case where the heirs do not take the necessary measures to cause the seals to be affixed to, and an inventory made of, the effects of the succession, that it has allowed to the creditors the right to cite the heirs before the Judge, in order to oblige them to declare whether they accept or renounce the succession. The law has not said that the estate shall be considered vacant. On the contrary, the heirs, by the very reason that they are entitled to the succession by (he operation of the law alone, must be called upon to declare their intention as to accepting or renouncing.the estate which they have acquired. In the case of O'Donnald v. Lobdell, already cited, this court said : “ It is only after the heir has been called by the creditors to renounce, or take the inheritance, that an administrator can be appointed.” A fortiori, would it have been illegal and irregular to appoint a curator to the estate of Mary Mayes, as to a vacant one. This is in accordance with the French jurisprudence on this subject. Rogron, note on art. 811 of Nap. Code. 4 Toullier, No. 396. 4 Duranton, (Brussels ed.) No. 60, 61, 62, 63, 64.
In coming to the conclusion that the succession of Mary Mayes never was, under the new Code, a vacant estate against which prescription could run, or that it had ceased to be such at the time of the promulgation of the present Civil Code, at which time the heirs became seised of the inheritance by them acquired by the mere operation of law, we give full effect to the provision of our law which says, that “minors cannot be prescribed against, except in the cases provided by law.” Civ. Code, art. 3488. Indeed, if such prescription had begun to run against them under the old law, under the supposition that the estate of their mother had become vacant, it is clear that it was suspended by the promulgation of the new Code; and that if, from the time of their majority, up to the institution of this suit, there has not been a sufficient length of time to complete the prescription, the claim of two of the plaintiffs to their respective portions of the *265 tract of land sold by their father, must prevail. James A. Calvit, according to the evidence, became of age in 1834, and Coleman W. Calvit attained the age of majority in 1836; the time from these periods up to the 23d of April, 1838, is about four years for one, and two years for the other; and added to the five years, three months and eighteen days, which had run under ihe old Code, is not sufficient to complete the prescription of ten years.
With this view of the question, we are of opinion that the claim set up by William J. and Elizabeth G. Calvit, is prescribed ; but that James A. Calvit and Coleman W. Calvit are entitled to recover respectively one undivided eighth of the tract of land described in their petition, which makes, for both, one-fourth of the whole tract.
With regard to the question of improvements ; we think that as the case stands, we cannot take it under our consideration. It is true, that the record contains evidence upon this subject which would, perhaps, be sufficient to enable us to liquidate the amount due to the parties respectively for the value of their improvements, and for the reimbursement of the rents and profits ; but as this part of the case was not acted upon by the court, a qua, we cannot assume original jurisdiction ; and, at any rate, we think it is proper that the case should be remanded for that purpose, as.it must, also, be sent back, for the purpose of settling the question of warranty resulting from the eviction, between the different warrantors called in this suit.
It is, therefore, ordered and decreed, that the judgment of the District Court, so far as it rejects the claim of the plaintiffs, James A. Calvit and Coleman W. Calvit, be annulled and reversed ^ that said James A. and Coleman W. Calvit do recover of the defendants, each, one undivided eighth of the tract of land described in their petition ; that they be quieted in their title to the said undivided eighth, hereby decreed to them respectively, as against the defendants, or any other person claiming through or under them ; and that with regard to the questions of improvements, and rents and profits, presented by the pleadings, so far as James A. and Coleman W. Calvit are interested, and to the question of damages between the warrantors, this case be re *266 manded to the lower court, to be proceeded on according to law. And it is further ordered, that with regard to William J. and Elizabeth G. Calvit, the judgment appealed from be affirmed; one-half of the costs in both courts to be paid by the defendants and appellees, and the other half to be borne by William J. and Elizabeth G. Calvit, two of the appellants.
"Where plaintiffs claim, as heirs of their mother, one-half of certain community property sold by the husband after the death of the wife, and the vendee proves that the price of the property was applied to the payment of the debts of the community, he will be entitled to the reimbursement of the amount so paid for its benefit, in proportion to plaintiffs’ interest in the community.
Brent and O. N. Ogden, for a re-hearing.
It is admitted that the succession of plaintiffs’ mother was a vacant one according to the Code of 1808. Book 3, tit. 1, art. 118. The character of the succession was determined by that Code; (6 La. 441;) and no posterior legislation could destroy or impair rights already acquired by third persons. The purchaser under whom defendants claim, acquired his title, such as might serve as the basis of prescription, more than five years before the promulgation of the Code of 1826 ; and prescription had run for that period against the estate, under the law in force at the time of opening the succession. In the case of Davis v. Elkins, 9 La. 145, Mathews, Judge, says : “ It may also be seriously questioned whether any provisions of posterior laws can justly be so construed, in regard to prescription, as to produce an abrogation of the rules previously established for the acquisition of property.” — “ If a right has once begun to exist, although it may be inchoate and not perfected, we are not able to see how, by any rational interpretation, consistent with just rules on this subject, a subsequent law can be made so to operate as to destroy it.” The opinion pronounced in this case, is at war with the decisions in the cases of Poultney's Heirs v. Cecil, (8 La. 411,) and Davis v. Elkins. All the points on which the plaintiffs rely in this case, were raised in that of Davis v. El-kins, and deliberately overruled. The facts, that the prescription of ten years was not completed under the old Code — that the Code of 1825 introduced new rules — that by the last, the heir was given seisin of the succession from the moment of its being opened, were all noticed by counsel and commented on by the court; and all the articles of the Code of 1825 were compared together, and critically examined.