*266 Same Case. — On a Re-hearing;
But the succession of the plaintiffs’ mother continued to be a vacant one after the promulgation of the Civil Code of 1825, when tested by the provisions of the new Code itself. This Code, art. 1088, declares, that lf a succession is called vacant, when no one claims it, or when all the heirs are unknown, or when all the known heirs renounce it.” The record shows, that the succession of the plaintiffs’ mother had not been claimed by any one when this suit was instituted. The principle asserted by the court in the decision in this case, leads to the inevitable conclusion, that there can be no such thing as a vacant succession, as no man will ever die without leaving heirs in some quarter of the globe ; or as Judge Mathews expresses it in the case of Davis v. Elkins: “ If the heir, whether known or unknown, absent or present, has by mere operation of law full seisin of the succession, both as to right and possession, how is it possible that there can be any such thing asa vaeant estate in this country?” The law should be so construed, ut res magis valeat qnam per eat. The rear soning of Judge Mathews, in the case just quoted, reconciles the apparent conflict between arts. 934, 936, and arts. 970 and 1088, by .calling in art. 940, which declares the rights of the heir to be suspended, until he decides whether to accept or reject the succession. The law gives the heir seisin of the succession from the moment of its being opened, but this right is in suspense until his acceptance is declared.
It is stated in the opinion of the court, that a curator could not have been appointed to the succession of the plaintiffs’ mother, because the father and natural tutor was in the possession of the property in dispute. But the property in dispute and the “ succession,” are different things. If the succession was a vacant one, (no one claiming it,) a curator might have been appointed, though a portion of the property were in the possession of the natural tutor of the heirs. Civ. Code, art. 1090. But the succession was a vacant one for another reason — the heirs were unknown. There is no evidence that the heirs were known till the institution of this action. When the law speaks of heirs being known, it refers to & judicial knowledge of them. If the heirs do not make themselves known as such, eo nomine, the law regards them as strangers to the succession. No one is compelled to accept a succession. Civ. Code, art. 970. But it is stated by the court, that the plaintiifs were minors, and that the omission to comply with the formalities necessary to enable them to accept the succession, cannot operate to their injury. This consideration would have weight, if the law had made any exception in fa.vor of minors. None such exists. The Civil Code, art. 1088, declares in positive terms, that “ the succession is vacant when nobody claims itthere is no provision that it shall not be so considered where the heirs are minors.
In the case of Poultney’s Heirs v. Cecil, (8 La. 411,) the action was instituted in December, 1832, and the heirs were minors, who, pending the suit, accepted the succession with benefit of inventory. The first question examined in that case was, whether the succession was vacant, or not. It was decided to be vacant. Bullard, J., in delivering the opinion of the court, said : “ These minor heirs, without acceptance, must be considered, (saving the right to accept at a future time,) as strangers to the succession, and the succession itself as vacant, and not represented by an heir.” The same Judge says further; (p. 414:) “ We have high authority for assuming as a principle, that the retroactive effect of an acceptance which is in truth but a fiction, should not be extended so as to operate to the prejudice of the rights of third persons previously acquired.” That is, until an actual acceptance, none shall be considered to have been made, so far as the rights of third persons, acquired in the intermediate time, are concerned. The succession of the plaintiffs’ mother, should be regarded as a vacant one, until actually accepted by the heirs; and the defendants having, before any such acceptance, acquired the prescription of ten years against it, such acceptance cannot operate to destroy a right thus previously acquired.
Should the opinion pronounced be maintained, an opportunity should be afforded to the defendants of showing, on a new trial below, that the price received by the plaintiffs’ father, was applied to the payment of the debts of the community, existing between him and their mother, in whose right the petitioners claim.
Simon, J.
The principal argument on which a re-hearing was asked and allowed in this cause, is based on the position taken by the defendants’ counsel, that the character of the succession of the plaintiffs’ mother, should be exclusively determined by the law in force at the time of its opeuing ; that it was then a vacant one, and that it must continue to be so under the new Code, as it was under the old one. And hence it has been ably and strenuously contended, that the defendants had acquired certain rights against the succession, which the new law could not affect; and that those rights, consisting in being entitled to complete the prescription which had begun to run under the old Code, such prescription, if completed under the new Code, should avail the defendants against heirs who have not accepted the succession of their mother, until long after said prescription was acquired. We are free to confess, that these arguments had shaken our opinion, and that their plausibility made us doubt for some time the correctness of our previous decisionbut wo have found, after a close re-examination of the question, that they were more specious than solid, and that it was not difficult to demonstrate it.
The counsel has greatly misunderstood us, when he says that our construction of the law of 1825, goes so far as to give to the heirs the seisin of the succession, from the moment it was opened under the Code of 1808. On the contrary, we took for granted, since it had been so decided by this court in the case of Davis' Heirs v. Elkins, (9 La. 145,) that it was vacant until the Code of 1825, and we gave his clients against two of the plaintiffs whose claim was defeated thereby, the benefit of the time which had run from the date of the sale from Calvit to them ; (2d of March, 1820;) but considering the prescription as suspended, during all the plaintiffs’ minority, from the effect of the new enactments on their rights, permitting it to continue to run and be *270 completed, after their attaining the age of majority. The defendants had acquired no right to the prescription contended for, at the time of the promulgation of the new Code; and how can such right, when not existing, be affected by our construction of the new law, when at the time of its enactment, it could have been interrupted by other causes. Troplong, in his treatise on Prescription, No. 1075, says : “ En principe, une prescription commences ne forme pasun droit eventuel acquis ; en e{fet, si on la considere comme moyen d’acquerir, elle est si peu un droit ac-quis qu’elle peut eire a tout moment effacée par une interruption; elle n’est encore qu’un germe facile a détruire, qu’une es-perance sujette a deception’’ Here, it is true the defendants had commenced their prescription under a law which would have perhaps permitted them to complete it, if it had not been changed; that is to say, if the succession of Mary Mayes had continued for ten years to be considered as vacant, and if it had not been suspended by the minority of her heirs, to whom the new law gave an immediate right to be seised of it, and to be viewed as the owners of the property which she had left at the time of her death. But this is not giving to the new law a retroactive effect; this is not affecting rights previously acquired. The prescription which had commenced, was not, before the new law, running against the heirs; it was against the presumed vacant estate of their motherand when, from the provisions of the new Code, it ceased to be vacant, could the prescription continue to run ? Surely not, for it would then have run against minors, vested with the seisin of the estate of their parent. It seems to us perfectly clear that, from the time the law was altered, so as to change the nature of a succession, and devolve it upon the legal heirs without any of the formalities previously required to claim or accept it, and without affecting any legal right previously acquired by third persons, such succession could validly change its denomination, and from a vacant one become at once a succession ab intestato. Here again, no right had been acquired ; for it cannot be pretended that the right to a part of the time necessary to prescribe, can be considered as a vested right. Such right is only vested when the prescription is completed; and until then, it may be destroyed by law, or by circumstances amounting to a sus *271 pension or interruption. The time for prescribing may be shortened or lengthened, as the new law may provide; and surely it cannot be contended, that such a law would have a retroactive effect, if lengthening the time necessary to prescribe under a former law, it subjected the possessor to a longer period of possession, than was required under the old law. No right being acquired, none would be affected; and the possessor, having the benefit of the time which elapsed under the old law, would be obliged to complete it according to the new law. 6 La. 674. 11 La. 59, 61.
But we cannot understand how it can be urged, that the defendants’ right to a prescription which was not acquired at the time of the promulgation of the new Code, was affected by the enactment of its provisions. It is well known, that a vacant estate declared to bé so at the time of its opening, is always subject to the contingency of its ceasing to be vacant, when the heirs of the deceased claim it, and sue the curator to be put in possession of it, and to compel him to account; and if such heirs are minors, could a prescription commenced against the estate, while it was vacant, continue to run against them ? Certainly not; it becomes suspended during their minority, (Civ. Code, art. 3488,) and may only continue to run after they have attained the age of majority. Here, the new law has done nothing but what the persons themselves, being minors, would have been enabled at any time to do, if they had been under the tutorship of a person well disposed to take care of their interest, and to administer their estate in a proper manner. The rights of the heirs were not changed, nor in any way bettered, nor extended by the new law; they were, under both laws, vested with the legal and incontrovertible right of inheriting the succession of their mother, and of claiming her estate as her heirs; and the only change which the new law made was, that under its provisions, the heirs became seised of it, by the mere operation of the law, and before their talcing any step to put themselves in possession, or expressing any will to accept it, (Civ. Code, art. 934, et seq.) Whilst under the former law, their failing to claim it, caused it to be considered as a vacant succession, though the heirs, all minors, were present in the State, and incapable of acting by themselves, and though *272 their tutor was in possession of their property, as being derived from the estate of their mother, and was thereby enabled to dis: pose of it to their prejudice; because, forsooth, the succession of Mary Mayes being vacant, the purchaser would acquire a good title by prescription, before the minors could have attained the age of majority. So, however, it has been decided by this court in the case of Davis v. Elkins. But as it is not our object to controvert that decision, or to question its correctness, in this case, we • shall leave it undisturbed, however unjust it may be in its consequences, until we have occasion to prevent its direct application, if we should be of opinion that it is unfounded in law and in equity. It is sufficient for us here to say, that the estate of Mary Mayes ceased to be vacant after the enactment of the new Code, in the same manner as if it had been claimed by her heirs; that those heirs became seised of it, although it had been opened under the old law and considered as a vacant one; that no right had been acquired by any one to its property, by prescription or otherwise, which was, or could be affected, or impaired by the new law; that this is not giving any retroactive effect to the Code of 1825, by which the previous vested rights of the parties were not changed, or even modified, but only applying its provisions to the actual situation of the plaintiffs at the .time of its promulgation •; and that we see no reason why our previous opinion should be disturbed on the subject of prescription pleaded by the defendants.
But the counsel has suggested, that his clients ought to have the opportunity of showing on a new trial in the lower court, that the price received by Calvit for the property in dispute, was applied to the payment of the debts due by the community existing between himself and his wife, the ancestor of the plaintiffs, in whose right they claim. This, we think, is right, and must be allowed ; as though the plaintiffs are entitled to recover their undivided portions of their land, illegally alienated by their natural tutor, they should not be permitted to enrich themselves at the expense of the defendants, who are clearly entitled to the reimbursement of the sums paid for the benefit of the community, to the proportion of the rights of the two plaintiffs, who have succeeded in this action, in and to the property formerly belonging to *273 the said community ; and this cause must also be remanded for the purpose. See Daquin et al. v. Coiron et al., 8 Mart. N. S. 608.
It is, therefore, ordered and decreed, that our former judgment be maintained, so far as it goes; and that, in addition to the purposes for which this cause was ordered to be remanded, it be also remanded for the purpose of ascertaining whether the price received by the plaintiffs’ father and tutor for the property in dispute, was applied to the payment of the community debts, to which lames A. and Coleman W. Calvit are bound to contribute in proportion to their rights thereto ; and that, in the mean time, no writ of possession issue, until they have paid the amount which may be found to be due by them on the trial of this cause in the lower court, under our first and our'present decree.